FILED
MAY 08 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY　　　　　　　DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE DELGADO,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>ALLY FINANCIAL, INC., CASHCALL, INC., NAVY FEDERAL CREDIT UNION, ONEMAIN FINANCIAL SERVICES, INC. f/k/a SPRINGLEAF FINANCIAL SERVICES, INC., CELLCO PARTNERSHIP, INC. d/b/a VERIZON WIRELESS, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES LLC,<br><br>　　　　　　　　Defendants. | Case No.: 3:17-cv-02189-BEN-JMA<br><br>**ORDER GRANTING DEFENDANT CASHCALL, INC.'S MOTION TO COMPEL ARBITRATION AND TO DISMISS ACTION** |

　　　　Before this Court is a Motion to Compel Arbitration and to Dismiss or Stay Action, filed by Defendant CashCall, Inc. ("CashCall"). (Doc. No. 8.) Defendant asserts that this dispute is subject to a binding arbitration clause, and asks this Court to grant the Motion to compel arbitration and dismiss or stay. For the reasons stated below, the Motion to Compel is **GRANTED**, and the action is **DISMISSED**.

1

## BACKGROUND

The facts relevant to CashCall's Motion to compel arbitration are as follows. On November 30, 2012, Plaintiff Maurice Delgado ("Delgado") submitted an online application to CashCall for a $2,600 loan. (Doc. No. 8-1 at 1-2.) After the loan was approved, CashCall provided Delgado with a document titled *CashCall, Inc. Promissory Note and Disclosure Statement* dated November 30, 2012. ("Note") (*Id.*) Before CashCall would execute the Note and disperse the funds, Delgado was required to review and check several boxes as part of the online loan application process.[1] (*Id.*) The first box that Delgado checked represented confirmation of the following:

> YOU CERTIFY THAT YOU HAVE READ AND UNDERSTAND THIS ARBITRATION PROVISION AND AGREE TO BE BOUND TO ITS TERMS.

(*Id.*)

Under the heading "**ARBITRATION PROVISION**," the Note sets out the agreement to arbitrate all disputes. (*Id.*) According to the Note, the term "Dispute" is "given the broadest possible meaning" and includes "all claims, disputes or controversies arising from or relating directly or indirectly to . . . any claim or attempt to set aside this

---

[1] The Note required Delgado to click four boxes to acknowledge he had read, understood and accepted the terms and conditions included in the Note. The boxes contained the following information:
(*Box 1*) YOU CERTIFY THAT YOU HAVE READ AND UNDERSTAND THIS ARBITRATION PROVISION AND AGREE TO BE BOUND TO ITS TERMS.
(*Box 2*) YOU CERTIFY THAT NO PERSON HAS PERFORMED ANY ACT AS A BROKER IN CONNECTION WITH THE MAKING OF THIS LOAN.
(*Box 3*) YOU CERTIFY THAT YOU HAVE READ AND UNDERSTAND THE AMORTIZATION SCHEDULE ON THIS LOAN.
(*Box 4*) **YOU HAVE READ ALL OF THE TERMS AND CONDITIONS OF THIS PROMISSORY NOTE AND DISCLOSURE STATEMENT AND AGREE TO BE BOUND BY ITS TERMS. YOU UNDERSTAND AND AGREE THAT YOUR EXECUTION OF THIS NOTE SHALL HAVE THE SAME LEGAL FORCE AND EFFECT AS A PAPER CONTRACT.**
(Doc. No. 8-3 at 5-6.)

Arbitration Provision," "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement," "all claims based upon a violation of any state or federal constitution, statute or regulation," and "all claims asserted by you individually against us." (*Id.*)

The Note specifies that Delgado acknowledges and agrees that by entering into the arbitration provision:

> (a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;
>
> (b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and
>
> (c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

(*Id.* at 3.)

The Note provides that the "Arbitration Provision continues in full force and effect, even if your obligations have been paid or discharged through bankruptcy" and CashCall will pay the filing fee and any costs or fees charged by the arbitrator. (*Id.*) Moreover, the Note provided Delgado with the right to opt out of the arbitration agreement by simply notifying CashCall within 60 days of the date of execution (*in writing*) of his intentions to do so.[2] (*Id.*)

---

[2] The record does not reflect Delgado exercised his right to opt out. (Doc. No. 8-1 at 3.)

3

3:17-cv-02189-BEN-JMA

After Delgado executed the Note by way of his electronic signature, CashCall dispersed the funds in accordance with the terms of the Note. (*Id.*) CashCall commenced collection activities against Delgado after he defaulted on the loan. (*Id.*)

On March 14, 2014, Delgado filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Middle District of Pennsylvania (Wilkes-Barre).[3] CashCall received notice of the filing and was included as a creditor in the Bankruptcy proceedings. CashCall did not seek to have the debt ordered "nondischargeable" or request relief from the "automatic stay" while the Bankruptcy was pending. (Compl. ¶¶ 89-93.) Delgado immediately commenced making monthly payments to the Bankruptcy Trustee as required by the Chapter 13 Bankruptcy Wage Earner Repayment Plan ("Plan").[4]

On April 11, 2017, the Bankruptcy Trustee filed a "Notice to Debtor" in the bankruptcy court reflecting Delgado made all 36 payments required by the Plan. Accordingly, Delgado's Bankruptcy was successfully discharged on April 18, 2017. (*Id.* ¶¶ 101, 110-11.) CashCall received notice of the discharged debt on April 20, 2017.[5] (*Id.* ¶ 112.)

Despite receiving notice of the bankruptcy discharge, CashCall "classified and reported" or "caused to be reported" on an Equifax report, the prior CashCall debt as "*Status*: Charge-Off; *Scheduled Payment Amount*: $388," instead of discharged via bankruptcy. (*Id.* ¶¶ 5, 152.) In effect, CashCall was erroneously representing to potential creditors that Delgado was actively delinquent with respect to a debt when in actuality, the debt was no longer owed. (*Id.*)

---

[3] Delgado's bankruptcy case was assigned Case Number 14-bk-01145.
[4] The terms of the Plan required Delgado to make monthly $300.00 payments to the Bankruptcy Trustee who, in turn, would disperse those payments amongst the creditors according to the terms of the confirmed Plan over the 36-month period of the Plan. (Compl. ¶¶ 95-101.)
[5] There is no indication that Delgado reaffirmed the debt obligation to CashCall.

4

Upon discovering the misleading and inaccurate account information, Delgado disputed the inaccurate tradelines with CashCall and Equifax. (*Id.* ¶ 151.) He alleges that CashCall failed to conduct a reasonable investigation and continued to report the false information. His repeated attempts to have the inaccurate and misleading information corrected went unheeded. (*Id.* ¶ 153.) Due to CashCall's inaccurate reporting and inaction, Delgado alleges he sustained actual damages.[6] (Id. ¶¶ 149-50.)

On October 26, 2017, Delgado filed his Complaint, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA") and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1 et seq. ("CCCRAA"). (Doc. No. 1 ¶ 12.) CashCall brings this Motion to Compel Arbitration of Delgado's claims. (Doc. No. 8.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 f.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). Arbitration agreements are "a matter of contract" and "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, and unconscionability.'" *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010).

---

[6] Delgado alleges he sustained actual damages such as pain and suffering, was impeded in seeking necessary products and services from vendors, humiliation, embarrassment, anxiety, loss of sleep, emotional distress, and defamation of character. (Compl. ¶¶ 149-50.)

5

If the court is "satisfied that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (U.S. 1983). If a court "…determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration." *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2-14-CV-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015).

# DISCUSSION

CashCall contends Delgado's claims arise from the parties' dealings regarding the CashCall debt and are thus subject to arbitration. (Doc. No. 8-1 at 5.) Delgado responds with two arguments: (1) CashCall's contract with Delgado is unenforceable; and (2) Arbitration cannot be compelled under the Federal Arbitration Act, in this case, because the contract is unenforceable. (Doc. No. 25 at 8.) The Court will analyze these arguments in order.

A.  <u>Plaintiff's Argument that CashCall's Contract with Delgado is Unenforceable.</u>

First, the Court must determine whether "there is a valid agreement between the parties to arbitrate…." *See Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). In making that determination, the Court must "be [ ] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue…." 9 U.S.C. § 4. "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Arbitration agreements are "a matter of contract" and "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, and unconscionability.' " *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). As the party seeking to avoid arbitration, Delgado

6

bears the burden of showing that the Arbitration Agreement does not cover this dispute. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Delgado fails to meet that burden here. CashCall offers ample evidence showing that Delgado entered into an arbitration agreement by completing the necessary steps and signing the Note at issue. First, when Delgado completed his application, he was presented with all the terms and conditions.[7] (Doc. No. 8-1 at 8-12.) Pages three through five of the Note describe the terms of the Arbitration Provision and included four separate boxes that had to be clicked to "check off" he read, understood and accepted them. (*Id.*) Included in the terms and conditions was an option for Delgado to opt-out of the arbitration agreement entirely by notifying CashCall in writing within 60 calendar days of the date of the Note [November 30, 2012]. (*Id.*) Finally, Delgado executed the Note by providing his electronic signature.[8] (*Id.*) In support of its motion, CashCall attached a copy of Delgado's completed CashCall, Inc. Promissory Note and Disclosure Statement as Exhibit A. (Doc. No. 8-3 at 5-11.)

Thus, the evidence clearly indicates Delgado agreed to arbitrate any claim arising from a dispute between him and CashCall and to waive his right to a trial. Accordingly, the Court finds that Delgado accepted the terms and conditions of the Note and finds there is an agreement between the parties to arbitrate.

Next, the Court must consider whether Delgado's claims fall within the scope of the Arbitration Provision. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of

---

[7] "The Note is only 6 pages long; the Note is printed in standard, easily readable typeface; and the arbitration provisions of the Note are clearly disclosed, unambiguous, and consumer-friendly." (Doc. No. 8-1 at 8.)

[8] Delgado presents no arguments to rebut CashCall's prima facie showing that Delgado accepted the terms and conditions of the Note.

7

arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (U.S. 1983).

The Arbitration Provision explicitly sets out the agreement to arbitrate covers "all claims, disputes or controversies arising from or relating directly or indirectly to . . . any claim or attempt to set aside this Arbitration Provision," "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement," "all claims based upon a violation of any state or federal constitution, statute or regulation," and "all claims asserted by you individually against us" of the Arbitration Provision. (Doc. 8-1 at 5-6.) Moreover, it affords the term "Dispute" the "broadest possible meaning." (*Id.*)

In the Complaint, Delgado alleges that CashCall (1) failed to conduct a reasonable investigation to correct misreported debt information on his credit report, and (2) CashCall's continued reporting of the prior debt as "Charged Off", as opposed to "discharged through bankruptcy," constitutes an attempt to collect a discharged debt in violation of the Bankruptcy Code. (Doc. No. 1 at 23-30.) The Court finds Delgado's assertion unconvincing considering the wording of the Arbitration Provision.

Here, both of Delgado's claims arise from and relate directly to Delgado's contractual interactions with CashCall. By affording "Dispute" the "broadest possible meaning," such claims are clearly covered by the Arbitration Provision and serve as prima facie evidence that his claims are covered. Moreover, Delgado's significant reliance on non-binding and clearly distinguishable case law is likewise unpersuasive. The Ninth Circuit has made it clear that there is "no evidence in the text of the Bankruptcy Code or in the legislative history suggesting that Congress intended to create an exception to the [Federal Arbitration Act] in the Bankruptcy Code." *In re Eber*, 687 F.3d 1123, 1129 (9th Cir. 2012). In reality, this Court "has the discretion to decline to enforce an otherwise applicable arbitration provision only if the arbitration would conflict with the underlying purpose of the Bankruptcy Code." (*Id.* at 1130.) (citing *In re Thorpe*

*Insulation Co.*, 671 F.3d at 1021). This Court finds no conflict between the Bankruptcy Code's purposes and enforcing the arbitration provision in this matter. Thus, the Arbitration Provision itself covers Delgado's claims and is evidence that his claims are covered under the terms and conditions of the Arbitration Provision.

Accordingly, the Court finds that Delgado's claims fall within the scope of the Arbitration Provision.

B. <u>Plaintiff's argument that arbitration cannot be compelled under the Federal Arbitration Act pursuant to an unenforceable contract.</u>

Delgado also opposes the enforcement of the arbitration provision on the basis his bankruptcy discharge rendered the arbitration provision unenforceable. (Doc. No. 25 at 4.) This assertion, however, is mistaken. A bankruptcy discharge does not render an arbitration agreement unenforceable. A bankruptcy discharge extinguishes the debtor's obligation to pay, but the other contractual provisions remain enforceable.[9] *See, e.g., Gadomski v. Wells Fargo Bank, N.A.*, 281 F.Supp.3d 1015 (E.D. Cal. 2018). The Ninth Circuit has stated that a bankruptcy discharge does not mean the whole contract has been merged into the judgment. *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 531 (9th Cir. 1998). A bankruptcy discharge "extinguishes only the personal liability of the debtor." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). Further, post-bankruptcy discharge arbitration is appropriate where there would be no adverse effect on the underlying purposes of the bankruptcy code. *See e.g. Bigelow v. Green Tree Fin. Servicing Corp.*, No. CV-99-6644, 2000 WL 33596476, at *6 (E.D. Cal. Nov. 30, 2000). Moreover, another district court has applied this reasoning to a post-bankruptcy claim brought under FCRA and found arbitration appropriate. *See e.g. Mann v. Equifax Info. Servs., LLC*, No. 12-CV-14097, 2013 WL 3814257, at *3 (E.D. Mich. July 22, 2013).

---

[9] A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor...." 11 U.S.C. § 524(a)(2).

9

The facts of *Mann* are strikingly similar to this case. In *Mann*, the plaintiff brought claims under FCRA and state law after obtaining a bankruptcy discharge, alleging the defendants incorrectly listed debts on his credit report that were discharged. (*Id.* at *5.) In its analysis, the court distinguished *Jernstad v. Green Tree Servicing, LLC*, No. 11 C7974, 2012 WL 8169889, at *1 (N.D. Ill. Aug. 2, 2012), which is relied on by Delgado. (*Id.* at *8-9.) The Court explained the plaintiff's claims in *Jernstad* all arose from the bank's attempt to collect on a discharged debt, unlike the claims brought under the FCRA and state law.[10] (*Id.* at *8.) The court then analyzed, *In re Eber*, 687 F.3d 1123, 1125 (9th Cir. 2012), and concluded that the proper inquiry was whether compelling arbitration conflicts with the underlying purpose of the bankruptcy code. (*Id.*) In rejecting the plaintiff's argument that arbitration would prevent him from obtaining the "fresh start" granted by the bankruptcy code, the court explained "the mere fact that *Mann* was granted a discharge of the *debt* owed to [the creditor] does not mean that the Arbitration Agreement ... cannot be enforced with respect to their future disputes." (*Id.*) (emphasis retained). The Court finds this reasoning persuasive.

Here, Delgado's claims relate solely to CashCall's alleged inaccurate reporting of a debt as "charged off," rather than "discharged in bankruptcy," and not CashCall's attempts to collect a discharged debt. (Doc. No. 1.) Delgado's argument that compelling arbitration conflicts with the bankruptcy code and prevents him from obtaining a fresh start is unsubstantiated by the facts presented. (Doc. No. 25 at 10-11.) Thus, the Court agrees with the Court's reasoning in *Mann* that "simply enforcing a provision which

---

[10] Similarly, cases relied on by Plaintiff to show an arbitration agreement is unenforceable post-bankruptcy discharge all deal with claims where the creditor was attempting to collect on debt that had been discharged. *See e.g. Harrier v. Verizon Wireless Pers. Commc'ns LP*, 903 F.Supp.2d 1281, 1282 (M.D. Fla. 2012) (alleging phone calls and emails from creditor concerning discharged debt); *In re Jorge*, 568 B.R. 25, 27 (Bankr. N.D. Ohio 2017) (alleging numerous phone calls and letters concerning a discharged debt).

defines the venue for resolving the instant dispute does not deprive [Delgado] of [a] 'fresh start' granted by the bankruptcy code." (*Id.* at 9.)

The Court concludes that the Arbitration Provision remains enforceable despite Delgado's bankruptcy discharge and CashCall may compel arbitration under the Federal Arbitration Act.

C. <u>Whether to Dismiss or Stay</u>

Having decided that all of Delgado's claims are subject to arbitration, the Court is within its discretion to dismiss the complaint under Rule 12(b)(6). *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1176 (C.D. Cal. 2008) (citing *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004)). "If a court ... determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration." *Hoekman v. Tamko Bldg. Prod., Inc.*, No. 2-14-CV-01581-TLN-KJN, 2015 WL 9591471, at *2 (E.D. Cal. Aug. 26, 2015) Consequently, because both claims are to be arbitrated, the Court dismisses Plaintiff's claims in favor of arbitration.

## CONCLUSION

In accordance with the conclusions set forth above, this Court **GRANTS** CashCalls' Motion to Compel Arbitration. The Parties are hereby compelled to arbitrate their claims. This Court, further **DENIES** CashCalls' Motion to Stay pursuant to 9 U.S.C. § 3, but **GRANTS** CashCalls' Motion to Dismiss action with prejudice.

**IT IS SO ORDERED.**

Dated: May __, 2018

HON. ROGER T. BENITEZ
United States District Judge